IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JEFFREY DEAN FORD,

    Petitioner,                    No. CIV S-05-0944 LKK GGH P

    vs.

TOM L. CAREY,                    <u>ORDER &</u>

    Respondents.             <u>FINDINGS AND RECOMMENDATIONS</u>

_____/

I. <u>Introduction</u>

        Petitioner is a state prisoner represented by appointed counsel proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his 2002 conviction for committing two bank robberies.[1] Petitioner was also found to have been convicted of two prior bank robberies. He is serving a sentence of sixty years to life. This action is proceeding on the second amended petition, filed on March 6, 2009. Pending before the court is respondent's June 29, 2009, motion to dismiss (Doc. 33) on grounds that claims two through five are barred by the statute of limitations. Petitioner filed a response (Doc. 38) on August 27, 2009, and also requested an evidentiary hearing regarding claim five. Respondent filed a reply (Doc.

---

[1] The jury acquitted petitioner of three other bank robberies.

39) on September 10, 2009.

A hearing was held before the undersigned on September 17, 2009, regarding the motion to dismiss. Marylou Hillberg appeared for petitioner and Brian Smiley appeared for respondent. After carefully considering the record, the court recommends that respondent's motion be granted in part.

II. Motion to Dismiss

The statute of limitations for federal habeas corpus petitions is set forth in 28 U.S.C. § 2244(d)(1):

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of–
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

On May 12, 2004, the California Supreme court denied petitioner's petition for direct review. Therefore, petitioner's conviction became final when the time for filing a petition for writ of certiorari expired 90 days later on August 10, 2004. Bowen v. Roe, 188 F.3d 1157, 1159 (9th Cir.1999). Petitioner had one year, that is, until August 10, 2005, to file a timely federal petition, absent applicable tolling. Petitioner timely filed his original federal habeas corpus petition on May 13, 2005. The petition alleged only one claim and on June 14, 2005, the undersigned appointed counsel. On February 16, 2006, following the expiration of the statute of

limitations, petitioner filed a first amended petition which contained the claim from the original petition and added four new unexhausted claims. On February 28, 2006, petitioner requested a stay of the proceedings to exhaust the new claims in state court. The undersigned recommended that the action be stayed and the district judge adopted the recommendation on August 23, 2006. The district judge ordered that petitioner proceed to exhaust the claims in state court within thirty days.

On July 30, 2008, *nearly two years* after the district court order, petitioner filed his exhaustion petition in state court. The California Supreme Court denied the petition on February 11, 2009. This court lifted the stay on March 17, 2009. On June 29, 2008, respondent filed a motion to dismiss claims two through five of the second amended petition as untimely.[2]

Facts

A brief recitation of the facts is necessary in this case. In September 2000, Detective Minter of the Sacramento Sheriff's Department was investigating a series of bank robberies that occurred between late July and August 2000. In early September 2000, Detective Minter was informed that Constance Goins, who was in police custody on unrelated drug offenses, had information concerning bank robberies in general. Detective Minter met with Goins on September 11, 2000. Goins stated that petitioner had admitted to her that he was addicted to robbing banks. Detective Minter investigated these claims and after gathering other evidence arrested petitioner on September 22, 2000. The trial was held between April 22, 2002 and May 2, 2002. Goins testified for the prosecution.

\\\\\

---

[2] There is no self-executing sanction for taking undue time in filing an exhaustion petition. The undersigned need not go into all the whys and wherefores of the delay here, but notes that it is respondent's ultimate responsibility to bring an undue delay to the court's attention with a request by respondent as to what the sanction should be. In appropriate cases, the sanction may include lifting the stay and striking the previously identified, and still, unexhausted claims. There is not much the undersigned can do to petitioner except tongue-wag when nothing is brought to the undersigned's attention until after the claims are exhausted, the stay lifted, and the case is proceeding on the merits.

<u>Claims 2, 3, & 4 - Brady Material</u>

Claims two, three and four in the second amended petition concern potential <u>Brady</u>[3] material that was not provided to petitioner at trial. Second Amended Petition (SAP) at 6-14. Petitioner alleges that Constance Goins, the main witness to testify against petitioner, testified in return for preferential treatment on various criminal cases she had pending. <u>Id</u>. at 1. Petitioner alleges that his trial counsel was not notified of this deal and the prosecution stated to trial counsel and the trial court that there was no deal. <u>Id</u>. at 2.

Claim two states that the prosecution failed to turn over this exculpatory information. <u>Id</u>. at 6. Claim three alleges that petitioner's trial counsel was ineffective for failing to investigate the favors granted to the witness and claim four contends that Goins provided false and perjurious testimony against petitioner. <u>Id</u>. at 11, 13.

Petitioner concedes that these claims were raised more than a year after petitioner's conviction became final. <u>Id</u>. at 16. Petitioner argues that the claims are timely as the limitations period began to run at a later date when the factual predicate of the claims was discovered pursuant to 28 U.S.C. § 2244(d)(1)(D).[4] Opposition to motion to dismiss (Opposition) at 8. Petitioner contends this information could not be discovered until counsel was appointed and began investigating in 2005.[5]

\\\\\

---

[3] <u>Brady v. Maryland</u>, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)

[4] Petitioner does not specify the exact date the statute of limitations commenced running, but seems to indicate it was between January and February of 2006. SAP at 16.

[5] Petitioner also initially argued that pursuant to 28 U.S.C. § 2244(d)(1)(B), the failure to disclose the <u>Brady</u> information was a state created impediment that delayed the commencement of the statute of limitations. It appears that petitioner has abandoned this argument. In any event, §2244(d)(1)(B) does not apply because that subsection is meant to apply to a known claim whose presentation in court the State is somehow impeding. It is the substantive nature of a <u>Brady</u> claim that the exculpatory/impeaching information was hidden from the defendant by the State prosecuting officials. If the factual predicate for the <u>Brady</u> claim is truly hidden past when the one year limitation would ordinarily apply, one may then rely on §2244(d)(1)(D).

1    Respondent counters that petitioner has failed to present any evidence that there
2 was a deal with Goins. Respondent states that the petitioner is merely speculating based on
3 Goins receiving probation for her arrests and noting her long criminal record. Reply to
4 petitioner's opposition (Reply) at 6. Regardless, respondent contends that the factual predicate of
5 this claim, the disposition of Goins' criminal cases, was easily discoverable by petitioner at an
6 earlier date, thus petitioner is still beyond the one year statute of limitations. Id. Respondent
7 notes that Goins' criminal record and the outcome of each case is a matter of public record and
8 can be easily discovered on the Sacramento Superior Court's publicly accessible website. Id.

Analysis

10    Twenty Eight U.S.C. § 2244(d)(1)(D) provides that the limitations period may run
11 from the date on which the factual predicate of the claim could have been discovered through due
12 diligence. A prisoner knows of the factual predicate of a claim "when ... he knows (or through
13 the diligence could discover) the important facts, not when the prisoner recognizes their legal
14 significance." Hasan v. Galaza, 254 F.3d 1150, 1154 n. 3 (9th Cir. 2001) (citing Owens v. Boyd,
15 235 F.3d 356, 359 (7th Cir. 2000)).

16    The gravaman of these claims is when petitioner could have discovered, through
17 due diligence, Goins' criminal history and the disposition of her cases. Petitioner has failed to
18 demonstrate that claims two, three and four should be given a later commencement date. After a
19 thorough review of the record the court finds that through due diligence, petitioner could have
20 discovered the factual predicates of this claim well before the first amended petition was filed
21 and prior the expiration of the statute of limitation. Despite the nearly two year period that
22 passed before petitioner filed the exhaustion petition in state court, petitioner still relies on a
23 factual predicate and speculative inferences therefrom which have been present since the trial
24 itself (whether or not they were recognized by anyone). These claims should be dismissed as
25 untimely.
26 \\\\\

Petitioner contends that the following information, discovered after the undersigned appointed counsel on June 14, 2005, led to the discovery of his Brady claims:[6]

Goins was in custody in September 2000, for felony possession of cocaine and drug paraphernalia on Sacramento County case no. 00F02758. Opposition at 4. Goins provided a statement to police concerning petitioner's involvement in bank robberies and a week later her bail was reduced to $8,000. Id. On September 27, 2000, five days after petitioner's arrest, Goins pled no contest to the charges and the sentencing court found unusual circumstances and granted her probation. Id. Petitioner notes that this disposition was quite favorable as Goins had already suffered five other felony convictions and seven misdemeanor convictions, where she received probation.[7] Id. at 5. Petitioner notes that Goins' record contains numerous violations of probation. Id. at 4.

While petitioner awaited trial on the instant case, a felony assault with a deadly weapon case was filed against Goins on May 10, 2001, Sacramento County case no. 01F03830. Id. at 5. On July 9, 2001, the assault charges were dismissed upon motion of the district attorney and three felony violations of probation were also dismissed. Id. Petitioner also states that the trial court on Goins' probation case added a new condition of probation in which Goins was to comply with all subpoena orders. Id. at 6. Petitioner believes this was ordered to insure Goins testified against petitioner. Id. Petitioner notes that Goins was arrested in 2004 for possession of cocaine and was sentenced to three years is prison on case no. 04F01106. Id. Petitioner opines that this latter prison sentence resulted from the district attorney's office no longer requiring Goins' cooperation. Id.

---

[6] While petitioner has provided case numbers for Goins' criminal cases, no exhibits were provided to the court.

[7] Felony cases, all from Sacramento County: 00F03291, 97F06782, 110287, 101200 and 97794.
  Misdemeanor cases, all from Sacramento County: 90M01278, 89M13349, 89M09809, 89M02458, 89M01870 and 89M00253. Petitioner noted seven cases but only provided six docket numbers.

6

While petitioner argues the newly discovered information was of vital import in establishing the factual predicate, the following testimony was heard at trial between April 22, 2002 and May 2, 2002, while petitioner was present:

Goins was in police custody on September 11, 2000, on a matter unrelated to the instant case, when she spoke with Detective Minter who was investigating several bank robberies. RT at 302, 358. Goins had an extensive criminal history. RT at 303-304, 477. Goins was also a frequent abuser of crack cocaine. RT at 338. Goins told Detective Minter that petitioner had admitted to her, that he was addicted to robbing banks. Id. Detective Minter told Goins that once he confirmed the information she provided, he would contact the deputy district attorney prosecuting her case. RT at 470. Goins was released from jail before the information she provided was confirmed. RT at 323. Goins denied on cross-examination that she provided the statement to police to get out of jail. Id. Beverly Ford, Goins' sister and petitioner's husband testified that a few weeks before trial Goins was found to be in possession of drugs by a police detective, but she was not arrested. RT at 567.

During trial on April 29, 2002, while petitioner was present, but out of the presence of the jury, the prosecution reported to the court that an arrest warrant was issued for Goins arrest on April 25, 2002. RT at 579. The district attorney's office and law enforcement were not responsible for issuing the warrant, rather a different judge issued a bench warrant when Goins failed to appear for a violation of probation hearing. Id. at 579-580. The prosecution relayed this information to the court to counter arguments by petitioner's trial counsel that there was a deal between Goins and law enforcement to delay an arrest warrant until after she testified. Id. at 580.

In addition to what petitioner learned at trial, the unique familial relationship of the various parties in this case would have also provided petitioner with the information that was discovered by petitioner's federal habeas counsel, had petitioner exercised due diligence. Goins had previously been romantically involved with petitioner. RT at 320-21. During the period of

7

1  petitioner's arrest and trial, petitioner was married to Beverly Ford, who is Goins' sister. RT at
2  295-96. At that time Goins was living with her mother. Following petitioner's arrest and during
3  trial, Beverly Ford began residing in the same house as Goins and their mother. RT at 562-63.

Following petitioner's arrest and after trial, it is more than arguable that Beverly Ford was present and aware of Goins' various criminal cases and their dispositions. While this court cannot speculate what specific information Beverly Ford was privy to and what she told petitioner, there is ample evidence that Beverly Ford was actively involved in Goins' life and in attempting to aid petitioner.

Petitioner was found guilty on May 2, 2002. On October 4, 2002, the trial court held a hearing on petitioner's motion for a new trial. RT at 710. Petitioner submitted a notarized statement from Goins who recanted her trial testimony and Goins appeared to testify. Id. On cross-examination the prosecution asked the following:

```
Q    Miss Goins, do you normally use the word recant when you talk to people
     or make expressions to people.
A    Never.
Q    Who drafted this note for you?
A    My sister, Beverly [Ford].
Q    All right. So did –
     Did you end up copying what she wrote in your own writing?
A    Exactly.
Q    Okay. And when you went to a notary, who took you to the notary?
A    My sister, Bevery [Ford].
Q    Okay. And your sister, Beverly [Ford] is [petitioner's] wife?
     Is that right?
A    That's correct.
Q    Okay. And has your sister, Beverly [Ford] put some pressure on you to
     help out the [petitioner] in this case?
A    Yes, she has.
Q    Okay. You would say this note –
     Well first of all, why did you go along with that she requested as far as
     writing this note and going to a notary?
A    Because my sister asked me – she's going though a lot of stress because of
     [petitioner] and she axed (sic) me to do it for her.
     And I love my sister, you know, I try to do anything I can. I've just been
     around a lot of stress and pressure of her as – you know, because she's
     been going through a lot of emotional problems and stress because of it.
Q    And during the trial you were living in the same – you were living under
     your mother's roof.
     Is that right?
```

| | | |
|---|---|---|
| 1 | A | That's correct. |
| | Q | And [petitioner's] wife was also living under that roof. |
| 2 | | Right? |
| | A | That's correct. |
| 3 | Q | And has that condition continued? |
| | | Are you– |
| 4 | | Are the– |
| | | Are you and your sister– this is the [petitioner's] wife– still living under |
| 5 | | the same roof? |
| | A | Yes, we are? |
| 6 | Q | Okay.  Now, after you went along and did what your sister asked you to do |
| | | regarding this note, was the pressure by her and other people alleviated a |
| 7 | | bit on you? |
| | A | Yes, it was. |
| 8 | Q | So people stopped putting as much pressure on you? |
| | A | Yes. |
| 9 | Q | Okay.  And she– |
| | | Do you know why she used the word recant versus that– writing the note I |
| 10 | | lied at the trial? |
| | A | Yes, 'cause she wanted to put that I lied, and I told her – |
| 11 | Petitioner's Counsel: | I'd object, grounds of speculation. |
| | Court: | Sustained.  You may rephrase. |
| 12 | Q | Why was the word from your point of view recant versus lie? |
| | A | Because lied would have mean that I– |
| 13 | | I mean, they told me don't lie.  They don't want me to put pressure on me |
| | | as to be violated for lying, perjuring myself or something. |
| 14 | | They said it was some section of the Penal Code or something, that I use |
| | | the word recant, would mean the same as saying lied. |
| 15 | Q | So you were saying– |
| | | You're saying that you would not say that you lied at trial? |
| 16 | A | No.  I wouldn't say that, no. |
| | Q | And did you, in fact, tell the truth at trial? |
| 17 | A | Yes, I did. |
| | Q | So if you were to say you did not tell the [truth] at trial, that would be a |
| 18 | | lie? |
| | A | Yes, it would. |
| 19 | Q | Somebody told you that you can kind of compromise a little and still help |
| | | the defendant by using the word recant? |
| 20 | A | Yes, they did. |
| | Q | All right.  And at no time did you tell– your saying that you told anyone |
| 21 | | that you actually lied about your testimony at trial. |
| | A | I never have. |
| 22 | Q | Okay.  An you have not, in fact, lied at trial. |
| | | Is that correct? |
| 23 | A | Never did. |

RT at 713-716.

It is apparent that petitioner's wife was doing everything in her power to aid her husband and had a great deal of interaction and influence with Goins.

9

Petitioner cites several out of circuit cases discussing 28 U.S.C. § 2244(d)(1)(D), and deciding the date where the factual predicate becomes known to the petitioners. In <u>Starns v. Andrews</u>, 524 F. 3d 612 (5th Cir.2008), the court examined when to begin the statute of limitations after a civil attorney as part of a wrongful death suit discovered exculpatory evidence while conducting a deposition. In <u>Daniels v. Uchtman</u>, 491 F. 3d 490 (7th Cir.2005) petitioner eventually learned that the prosecution's principal witness signed an affidavit recanting his testimony.

In the instant case, petitioner does not even cite to a date when the factual predicate became known. Rather, it is an amorphous time period when petitioner became aware of Goins' criminal record and case dispositions. The cases petitioner cites, involved concrete, "surprise," exculpatory information, while in the instant case petitioner can only speculate about inferences which existed at the time of trial.

It is evident that the factual predicate could easily have been discovered with due diligence. At trial there was testimony that Goins was incarcerated when she provided a statement to police and that she had an extensive criminal record. RT at 302-304. While petitioner's trial counsel should have perhaps gone into more detail in cross-examination about a deal with the prosecution, trial counsel did press the issue when a warrant was issued for Goins' arrest following her testimony. RT at 579-580. Beverly Ford testified that Goins' was found by a police detective to be in possession of illegal drugs but was not arrested. RT at 567. There was sufficient evidence for petitioner to deduce that perhaps Goins was receiving special treatment from law enforcement.

Petitioner cites <u>Schlueter v. Varner</u>, 384 F. 3d 69, 74 (3rd Cir.2004), for the proposition that incarceration can limit a petitioner's ability to exercise due diligence. While this is true, the factual predicate at issue in the instant case was discoverable by the evidence presented at trial. Furthermore, the court in <u>Schlueter</u> was not persuaded by petitioner's argument that incarceration prevented him from exercising due diligence, noting that petitioner

was aided by his family.

In the instant case, as the court has noted, petitioner was aided by Beverly Ford who went to great lengths to aid petitioner.  At the hearing before the undersigned, petitioner's counsel remarked how helpful and committed petitioner's wife has been during the federal habeas proceedings.[8]  Petitioner was also represented by counsel in the state court appellate process, yet there is no explanation why with all the knowledge about Goins, petitioner did not request habeas counsel to investigate the matter.  Thus, the factual predicate underlying claims two, three and four was sufficiently in existence long before petitioner's conviction became final, and inferences could have been further fleshed out had petitioner exercised due diligence.

Petitioner also requests equitable tolling with respect to claim three, arguing that petitioner was affirmatively misled by the prosecution and trial counsel's misconduct in failing to further investigate Goins was sufficiently egregious conduct to warrant equitable tolling.  Spitsyn v. Moore, 345 F.3d 796, 800 (9th Cir.2003).  Petitioner misses the point.  The factual predicate was sufficiently available *to him* at trial and post-trial such that the requirement of diligence (part of any equitable tolling analysis) commenced at that time.

Claim 5 - Actual Innocence

Claim five in the second amended petition alleges that petitioner is actually innocent, as his DNA may not have been on a sweatshirt recovered following one of the bank robberies.  SAP at 14-16.  Respondent contends that this claim is untimely and petitioner has not pled sufficient facts to establish due diligence in pursuing this claim.  Motion to dismiss at 9-12. Petitioner counters that any delay in obtaining the DNA testing should be excused by equitable tolling and also requests an evidentiary hearing to demonstrate due diligence.  SAP at 19-20.

A teller at one of the bank robberies gave the robber an explosive dye pack with a set of bills.  RT at 178.  The teller observed the dye pack explode from the pocket of the

---

[8] It is unclear if petitioner is still married to Beverly Ford.

1 sweatshirt worn by the robber, as the robber crossed the street outside of the bank. Id. Police
2 later recovered from the scene the exploded dye pack, loose money stained with red dye and a
3 sweatshirt with a burnt hole and a red dye stain. RT at 223. At trial a criminalist testified that
4 the sweatshirt did not contain enough DNA to obtain a profile. RT at 347.

5       Petitioner alleges that advancements in DNA technology allowed the small DNA
6 samples from the sweatshirt to be tested in 2007. SAP at 15-16. Three samples were taken from
7 the sweatshirt and petitioner was excluded from two of them. SAP at 16. Petitioner could not be
8 excluded as a minor contributor from the third sample. Id. The DNA report stated that
9 approximately one person in eighteen would be similarly not excluded from that sample.
10 Request to lift stay (Stay) at 21, filed on March 6, 2009 (Doc. 22) .

11       Analysis

12       Analysis of petitioner's assertion here is complex. First, the Supreme Court has
13 never unequivocally found the existence of a viable habeas claim based not on constitutional
14 error, but as a free standing claim. However, the Ninth Circuit has found the existence of such a
15 free standing claim. Boyde v. Brown, 404 F.3d 1159, 1168 (9th Cir. 2005) citing Carriger v.
16 Stewart, 132 F.3d 463, 476 (9th Cir. 1997) (en banc). Taking direction from the Ninth Circuit,
17 the issue then becomes whether there exists an omnibus exception to the AEDPA limitations
18 preclusions (based simply on the nature of an actual innocence claim), or whether one must
19 establish that he was diligent in ferreting out the factual predicate establishing his innocence (the
20 § 2244(d)(1)(D) trigger). *And* assuming diligence or the existence of the omnibus exception
21 regardless of diligence, the extent to which petitioner must establish his innocence *in the*
22 *limitations proceedings* to be eligible to avoid the AEDPA limitations statute.

23       Secondly, equitable tolling plays no part in the analysis of the limitations issue on
24 an actual innocence claim. Either there exists an omnibus exception, actionable at any time, for
25 which no tolling is necessary, or the diligence requirement inherent in equitable tolling, see
26 Bryant v. Arizona Atty. Gen., 499 F.3d 1056, 1061 (9th Cir. 2007), has already been decided in

the context of the 2244(d)(1) analysis. Assuming that one has diligently attempted to procure and present his actual innocence, such will suffice to trigger the alternative "factual predicate" limitations trigger.

Under Schlup, the Supreme Court held that, a petitioner's "otherwise-barred claims [may be] considered on the merits ... if his claim of actual innocence is sufficient to bring him within the 'narrow class of cases ... implicating a fundamental miscarriage of justice.'" Carriger v. Stewart, 132 F. 3d 463, 467 (9th Cir.1997) (en banc) (quoting Schlup v. Delo, 513 U.S. 298, 315, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). Yet, neither the Supreme Court nor the Ninth Circuit has yet reached the conclusion that the strenuous Schlup "fundamental miscarriage of justice standard" is adequate to override or even to be applied to the statute of limitations set forth in the AEDPA statute. Majoy v. Roe, 296 F.3d 770, 775-76 (9th Cir. 2002).

The Majoy court expressly found that question had not been reached either in the Ninth Circuit or by the U.S. Supreme Court, id., and that it was premature for the Majoy court to decide the legal issue unless and until the district court found that its petitioner could actually pass through the Schlup gateway. The district court was to have first crack at the legal issue as well.[9]

This court has at times noted in the context of the equitable tolling inquiry that the limitations period may be equitably tolled, or simply not applied, in a situation where the habeas petitioner makes a colorable demonstration of actual innocence. See Miller v. Marr, 141 F.3d 976, 978 (10th Cir. 1998) (intimating that the AEDPA limitations period may be unconstitutional if a claim of actual innocence were at stake); United States v. Zuno-Acre, 25 F.Supp.2d 1087, 1099-1100 (C.D.Cal.1998) (holding that there is a "miscarriage of justice gateway" to non-application of the AEDPA limitations period). Some courts have suggested that dismissal of

---

[9] On remand, after extensive evidentiary hearings, the district court held that petitioner could not pass through the Schlup gateway, thus the AEDPA statute of limitations issue was not addressed. Majoy v. Roe, ---F. Supp. 2d ----, 2009 WL 2489217 (C.D. Cal. Aug. 4, 2009).

actual or legal innocence claims on grounds that they are barred by the statute of limitations violates the Suspension Clause (U.S. Const. art. I, § 9, cl. 2 ("The Privilege of the Writ of Habeas Corpus may not be suspended, unless when in Case of Rebellion or Invasion the public Safety may require it.")). See Rodriguez v. Artuz, 990 F.Supp. 275, 283 (S.D.N.Y.1998), affirmed, 161 F.3d 763 (2nd Cir.1998) ( "where no claim of actual or legal innocence was raised, as long as the procedural limits on habeas leave petitioners with some reasonable opportunity to have their claims heard on the merits ... [there is no] suspension of the writ."). See also Johnson v. Knowles, 541 F.3d 933 (9th Cir.2008), where the parties assumed the applicability of Schlup to a statute of limitations issue, and so therefore did the court.

However, upon analysis of the AEDPA statute itself, the undersigned concludes that actual innocence does not provide an exemption to bringing claims in a diligent fashion.

The First Circuit has opined, in David v. Hall, 318 F.3d 343, 347 (1st Cir.2003):

> Nothing is changed here by David's claim of actual innocence, a claim itself derived from his mistaken-colloquy argument. In general, defendants who may be innocent are constrained by the same explicit statutory or rule-based deadlines as those against whom the evidence is overwhelming: pre-trial motions must be filed on time, timely appeals must be lodged, and habeas claims must conform to AEDPA. In particular, the statutory one-year limit on filing initial habeas petitions is not mitigated by any statutory exception for actual innocence even though Congress clearly knew how to provide such an escape hatch.

The court is persuaded by the David rationale that claims of actual innocence are required to be brought diligently the same as any other claim. See also, Araujo v. Chandler, 435 F.3d 678, 681 (7th Cir.2005) (finding "actual innocence" claim must fit within the provisions of § 2244(d)(1)(D) to be timely and that petitioner did not exercise due diligence in bringing facts of claim to federal court)[10]; Flanders v. Graves, 299 F.3d 974, 978 (8th Cir.2002) (while not holding that actual innocence is irrelevant in the equitable tolling context, finding that a petitioner would, at a minimum, have to show diligence); Cousin v. Jenning, 310 F.3d 843, 849 (5th Cir.2002)

---

[10] The Seventh Circuit has also determined that "actual innocence is not a freestanding exception to the statute." Araujo, supra, at 682.

(finding no explicit exemption for actual innocence claim under § 2244(d) and such claims relevant to timeliness only if they warrant equitable tolling of the limitations period); Felder v. Johnson, 204 F.3d 168, 171 (5th Cir. 2000) ("actual innocence claim ... does not constitute a 'rare and exceptional circumstance ....' ").

Indeed, the AEDPA statute of limitations does not even commence to run until the factual predicate for the claim could have become known with reasonable diligence. 28 U.S.C. § 2244(d)(1)(D). It becomes absurd to think that one who knows, or should know, of a claim for actual innocence may pocket the claim, and only spring it years or decades after the fact. In essence, a suspension or ignoring of the AEDPA statute of limitations is not necessary for claims of actual innocence. If petitioner had knowledge of the factual predicate of his claim of actual innocence years ago, as he must have if it is true, or should have had such knowledge years ago, his lack of diligence precludes him (and should preclude him) from proceeding at present. Congress anticipated newly discovered factual predicates, including those for actual innocence claims, and provided for such in the AEDPA limitations statute itself.

Ironically, in Chestang v. Sisto, 2009 WL 2567860 (E.D. Cal. August 18, 2009), a similarly situated case with an actual innocence claim, the undersigned used the following example:

> Thus, in a situation, for example, where DNA evidence is newly discovered, or a new testing procedure is discovered, which was not available at the time of trial, or even initial post-trial proceedings, and which would prove actual innocence, the AEDPA limitations period would not start to run until the discovery of such evidence or procedure. But there is no reason to allow a petitioner to sit on such evidence after discovery until such time as petitioner feels the time is right to bring it.

Id. at 13.

Yet, the above analysis is not dispositive in the instant case. Here, it is not clear if petitioner has a colorable actual innocence claim or if petitioner exercised due diligence in pursuing this claim. Petitioner's pleadings describe in detail certain aspects of the history in

\\\\\

obtaining the DNA, but also leave out several key issues.[11] It appears that petitioner obtained assistance from the Northern California Innocence Project at Golden Gate University, at some point in 2005, however the exact date and process is noticeably absent. Stay at 3. The innocence project was discontinued at some point and on an unspecified date the Sacramento County Superior Court appointed an attorney to continue with DNA testing. Id. Petitioner delves into great detail how the appointed attorneys took several years to finally get the DNA tested. Id. at 3-4. While petitioner may have exercised due diligence at that time, the record is silent as to the origins of this claim which is essential in the court making a finding. Nor has petitioner described the advances in DNA testing that made these tests possible. While petitioner's pleadings are lacking the allegations still could give rise to a triggering of the AEDPA limitations which makes the claim timely.

If one were to assume the existence of an actual innocence blanket exception to the AEDPA limitations statute, as was done in Johnson v. Knowles, supra, it is clear from that case that petitioner must actually demonstrate the merits of his claim to avoid the limitations bar. "Thus, in light of Supreme Court precedent, as well as our own, we conclude that the miscarriage of justice exception [to an AEDPA limitations bar] is limited to those *extraordinary* cases where the petitioner asserts his innocence and establishes that the court cannot have confidence in the contrary finding of guilt." Johnson, 541 F.3d at 937. In such a situation, of course, the limitations issues is merged with the ultimate issue of actual innocence.

If on the other hand, the undersigned's analysis is correct that the § 2244(d)(1)(D) is the proper framework in which to view a limitations defense to a claim of actual innocence, the merits, as well as diligence, merge somewhat. That is, in showing diligence for the application of a later trigger, it may well be necessary to show that the exculpatory DNA tests were not available at the commencement of the ordinary limitations trigger, and hence, petitioner must

---

[11] There is no explanation why this information is missing from petitioner's pleadings other than describing it as long and complex.

1  establish when the bona fides of his actual innocence claim arose.  In establishing this, petitioner
2  must show along the way that he has a bona fide actual innocence assertion in the first place.
3  　　　　　　The necessity for an evidentiary hearing is thus inescapable.  As long as the actual
4  innocence claim is not patently frivolous, the undersigned cannot rule on the limitations motion
5  without a full exploration of the merits of the issue.
6  　　　　　　IT IS HEREBY ORDERED that an evidentiary hearing regarding petitioner due
7  diligence in pursuing claim five, the actual innocence claim, is scheduled for January 12, 2010, at
8  9:00 a.m., before the undersigned.
9  　　　　　　IT IS HEREBY RECOMMENDED that the motion to dismiss be granted for
10 claims two, three and four and these claims be dismissed.
11 　　　　　　These findings and recommendations are submitted to the United States District
12 Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty
13 days after being served with these findings and recommendations, any party may file written
14 objections with the court and serve a copy on all parties.  Such a document should be captioned
15 "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections
16 shall be served and filed within ten days after service of the objections.  The parties are advised
17 that failure to file objections within the specified time may waive the right to appeal the District
18 Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).
19 Dated: 11/12/09

　　　　　　　　　　　　　　　　　　　　　　　　/s/ Gregory G. Hollows
　　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE

ggh:ab
ford944.mtd