IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JEFFREY DEAN FORD,                     No. CIV S-05-0944 LKK GGH P

    Petitioner,

  vs.

FERNANDO GONZALEZ, Warden,             <u>ORDER</u> and

    Respondent.                       <u>FINDINGS & RECOMMENDATIONS</u>

/

I. <u>Introduction</u>

        Petitioner, proceeding with appointed counsel, has filed a petition pursuant to 28 U.S.C. § 2254. Petitioner challenges his 2002 conviction for committing two bank robberies. He is serving a sentence of sixty years to life. This action is proceeding on the second amended petition, filed on March 6, 2009. Four of the original five counts having been dismissed by court order on March 17, 2010, petitioner's remaining claim alleges ineffective assistance of trial counsel in violation of the Sixth Amendment. Specifically, plaintiff alleges that his counsel was ineffective for failing to object to certain evidence and argument suggesting that petitioner would serve a prison sentence of ten years or less if convicted, when in fact petitioner faced a mandatory sentence of twenty-five years to life for each count of conviction. Pending is petitioner's request for an evidentiary hearing on trial counsel's tactical reasons for not objecting to this evidence.

1

Alternatively, petitioner seeks to depose his trial counsel on this subject.

Upon careful consideration of the moving papers and the record, the undersigned concludes that petitioner's motion should be denied.

II. Anti-Terrorism and Effective Death Penalty Act (AEDPA)

The Anti-Terrorism and Effective Death Penalty Act (AEDPA) "worked substantial changes to the law of habeas corpus," establishing more deferential standards of review to be used by a federal habeas court in assessing a state court's adjudication of a criminal defendant's claims of constitutional error. Moore v. Calderon, 108 F.3d 261, 263 (9th Cir. 1997).

In Williams (Terry) v. Taylor, 529 U.S. 362, 120 S. Ct. 1495 (2000), the Supreme Court defined the operative review standard set forth in § 2254(d). Justice O'Connor's opinion for Section II of the opinion constitutes the majority opinion of the court. There is a dichotomy between "contrary to" clearly established law as enunciated by the Supreme Court, and an "unreasonable application of" that law. Id. at 1519. "Contrary to" clearly established law applies to two situations: (1) where the state court legal conclusion is opposite that of the Supreme Court on a point of law, or (2) if the state court case is materially indistinguishable from a Supreme Court case, i.e., on point factually, yet the legal result is opposite.

"Unreasonable application" of established law, on the other hand, applies to mixed questions of law and fact, that is, the application of law to fact where there are no factually on point Supreme Court cases which mandate the result for the precise factual scenario at issue. Williams (Terry), 529 U.S. at 407-08, 120 S. Ct. at 1520-1521 (2000). It is this prong of the AEDPA standard of review which directs deference to be paid to state court decisions. While the deference is not blindly automatic, "the most important point is that an *unreasonable* application of federal law is different from an incorrect application of law....[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather,

that application must also be unreasonable." Williams (Terry), 529 U.S. at 410-11, 120 S. Ct. at 1522 (emphasis in original). The habeas corpus petitioner bears the burden of demonstrating the objectively unreasonable nature of the state court decision in light of controlling Supreme Court authority. Woodford v. Viscotti, 537 U.S. 19, 123 S. Ct. 357 (2002).

"Clearly established" law is law that has been "squarely addressed" by the United States Supreme Court. Wright v. Van Patten, 552 U.S. 120, 125, 128 S.Ct. 743, 746 (2008). Thus, extrapolations of settled law to unique situations will not qualify as clearly established. See e.g., Carey v. Musladin, 549 U.S. 70, 76, 127 S.Ct. 649, 653-54 (2006) (established law not permitting state sponsored practices to inject bias into a criminal proceeding by compelling a defendant to wear prison clothing or by unnecessary showing of uniformed guards does not qualify as clearly established law when spectators' conduct is the alleged cause of bias injection).

The state courts need not have cited to federal authority, or even have indicated awareness of federal authority in arriving at their decision. Early v. Packer, 537 U.S. 3, 123 S. Ct. 362 (2002). Nevertheless, the state decision cannot be rejected unless the decision itself is contrary to, or an unreasonable application of, established Supreme Court authority. Id. An unreasonable error is one in excess of even a reviewing court's perception that "clear error" has occurred. Lockyer v. Andrade, 538 U.S. 63, 75-76, 123 S. Ct. 1166, 1175 (2003). Moreover, the established Supreme Court authority reviewed must be a pronouncement on constitutional principles, or other controlling federal law, as opposed to a pronouncement of statutes or rules binding only on federal courts. Early v. Packer, 537 U.S. at 9, 123 S. Ct. at 366.

However, where the state courts have not addressed the constitutional issue in dispute in any reasoned opinion, the federal court will independently review the record in adjudication of that issue. "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).

III. Background

In its unpublished memorandum and order affirming petitioner's judgment of conviction on appeal, the California Court of Appeal for the Third Appellate District provided the following factual summary of petitioner's offense and conviction:

> Defendant was charged with six bank robberies, three U.S. Bank branches, one River City Bank branch, one Washington Mutual Bank branch and one Heritage Community Credit Union branch, occurring between late July and August of 2000. Before trial, Antoine Hannon confessed to robbing the Heritage Community Credit Union branch. Accordingly, that charge was dismissed.
>
> Hannon had been charged with 10 robberies of stores and credit unions. He confessed to nine and pleaded guilty to six and admitted committing the Heritage Community Credit Union robbery. The defense trial strategy was to raise a reasonable doubt that, in fact, Hannon and not defendant had committed the charged robberies.
>
> In an effort to preempt this defense, the prosecutor introduced evidence about Hannon and his robberies. The investigating officer, Detective Mintner, testified that the Hannon robberies had a different methodology than those with which defendant was charged. Detective Mintner also noted that although there were physical similarities between Hannon and defendant, there were significant differences as well, including the fact that Hannon was three to four inches shorter than defendant and 20 to 35 pounds lighter. <u>The prosecutor elicited detailed information regarding the facts and circumstances surrounding Hannon's robberies, including the fact that after pleading guilty to six robberies, Hannon was sentenced to 10 years in state prison</u>.
>
> Defendant was found guilty of two counts of robbery. In bifurcated proceedings, the court found true the two prior serious felony allegations. (§§ 667, subds.(a)-(I), 1170.12.) Defendant was sentenced to an aggregate term of 60 years to life.

(Lod. Doc. 3 at 1-3 (emphasis added)).

The prosecutor again referenced the Hannon conviction and sentence in final argument, but with the purpose of arguing that Hannon was in the process of getting a good deal for his total honesty, and would have wanted to confess to all robberies with which he was involved because he was getting "rewarded" for his "coming clean" (and not later punished for dishonesty):

4

> And in fact, he ended up admitting to nine robberies, and he ended up pleading guilty to six of them in court, and ended up getting ten years, and he had the other three dismissed.
>
> If he didn't want to get any more time, he would have wanted to clear up any and all other cases against him in order to plead to some and have some dismissed.

[the prosecutor then gave an example of Hannon admitting to other robberies and denying involvement in another].

RT 588-89.

IV. Analysis

Petitioner asserts that his trial counsel, Johnnie Griffin, rendered ineffective assistance by failing to object to the prosecutor's introduction of evidence, and subsequent statement in closing argument, that Hannon received a ten-year prison sentence in exchange for admitting to six bank robberies. Petitioner contends that this evidence was improper and inadmissable because it misleadingly suggested to the jury that petitioner, if convicted, would face a similar or lesser sentence. Petitioner believes the evidence prejudiced him by "lull[ing] the jury into the false belief that a mistaken conviction would not have life long penalties for petitioner" and contributed to a compromise verdict of guilty on two of the five counts charged. (Traverse at 6-7.) Citing the jury's difficulty in reaching a decision, petitioner suggests that, had Mr. Griffin made it known that petitioner faced a potential sentence of fifty years to life, the jury would have hung on those counts rather than convicted. (Id.) Petitioner requests an evidentiary hearing on his trial counsel's tactical reasons for failing to object to the sentence-related evidence.  In the alternative, petitioner seeks to depose his trial counsel on this issue.

Respondent counters that no evidentiary hearing or deposition is warranted, as attorney Griffin's subjective reasons for failing to object are irrelevant. Rather, respondent contends, the court of appeal properly found that Griffin's decision was objectively reasonable; thus, petitioner is entitled to neither habeas relief nor an evidentiary hearing on this issue.

The undersigned weighs the merits of these arguments below.

A. <u>Standards for an Evidentiary Hearing</u>

The ordinary standards under federal law for an evidentiary hearing, which are well known and well established in the Ninth Circuit, are as follows. "To obtain an evidentiary hearing on an ineffective assistance of counsel claim, a habeas petitioner must establish that (1) his allegations, if proven, would constitute a colorable claim, thereby entitling him to relief and (2) the state court trier of fact has not, after a full and fair hearing, reliably found the relevant facts." <u>Correll v. Stewart</u>, 137 F.3d 1404, 1413 (9th Cir. 1998). Nevertheless, the court does not have to hold an evidentiary hearing when the record clearly refutes the collateral factual allegations raised by petitioner. <u>Schriro v. Landrigan</u>, 550 U.S. 465, 127 S. Ct. 1933, 1940 (2007). Moreover, <u>Schriro</u> also announced that in determining whether to grant an evidentiary hearing the federal court must apply the AEDPA deferential standards to legal and factual questions necessarily reached by the state courts. <u>Id</u>. Thus, for example, if the reasons for counsel actions were at issue, but under deferential standards, the court could not find prejudice, no evidentiary hearing would be necessary.

In addition, the undersigned emphasizes that in order to obtain an evidentiary hearing, the claim, when viewed in light of the allegations, must be colorable. "It is well settled that '[c]onclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief.'" <u>Jones v. Gomez</u>, 66 F.3d 199, 204 (9th Cir. 1995) quoting <u>James v. Borg</u>, 24 F.3d 20, 26 (9th Cir. 1994). This includes the recitation of critical facts supporting the alleged violation, including any requirement of prejudice.

For the reasons set forth below, petitioner has not set forth a colorable claim of prejudice from asserted ineffective assistance of counsel that would require an evidentiary hearing.

B. <u>Court of Appeal Opinion</u>

On appeal, the Court of Appeal, Third Appellate District, considered petitioner's ineffective assistance of counsel claim and rejected it, reasoning as follows:

6

Defendant's sole contention on appeal is that his trial counsel provided ineffective assistance of counsel by "failing to object to inadmissible evidence of penalty and to the prosecutorial misconduct involved in introducing such evidence." The specific evidence about which defendant complains is the evidence that Hannon was sentenced to 10 years in state prison for committing six robberies.

To prevail on this claim, defendant must show that his counsel's representation fell below an objective standard of reasonableness, and but for counsel's error, there is a reasonable probability of an outcome more favorable to defendant. (Strickland v. Washington (1984) 466 U.S. 668, 687-688, 693-694 [80 L.Ed.2d 674, 693-694, 697-698]; People v. Ledesma (1987) 43 Cal.3d 171, 215-218.) Further, defendant is not entitled to relief on direct appeal if the record does not show why counsel acted, or failed to act, in the manner defendant challenges unless there is no satisfactory explanation for counsel's conduct or counsel was asked for an explanation and failed to provide one. (See People v. Mendoza Tello (1997) 15 Cal.4th 264, 266.)  Here, defendant has not shown that his counsel was ineffective for failing to object to the evidence of Hannon's punishment.

Defendant correctly points out that "[i]t is settled that in the trial of a criminal case the trier of fact is not to be concerned with the question of penalty, punishment or disposition in arriving at a verdict as to guilt or innocence." ( People v. Allen (1973) 29 Cal.App.3d 932, 936.)  Defendant goes on to contend that although it was not his potential punishment that was put before the jury, the fact that the jury knew Hannon pleaded guilty to six counts of robbery and was sentenced to only 10 years negated "normal jury dread" and "allowed the jury to arrive at what was clearly a compromise verdict." Specifically, he claims that because Hannon had committed six bank robberies and was sentenced to 10 years and "because the jury convicted [defendant] of only ... one-third of Hannon's convictions, any reasonable juror would believe appellant would be subject to a penalty of approximately one-third of ten years, or three to four years in prison." We reject this speculation.

Assuming there was a valid basis for objection, objections are a matter of trial tactics and counsel's tactical decisions " ' "are accorded substantial deference...." [Citation.] "In order to prevail on [an ineffective assistance of counsel] claim on direct appeal, the record must affirmatively disclose the lack of a rational tactical purpose for the challenged act or omission." [Citation.]' " (People v. Majors (1998) 18 Cal.4th 385, 403, quoting People v. Williams

7

(1997) 16 Cal.4th 153, 215.)

> Defense counsel's decision appears to have been one based on sound trial tactics. Defense counsel may well have been seeking to capitalize on the notion of "jury dread" to work in defendant's favor. This was a case defended on the basis of mistaken identification. As appellant points out, there was evidence suggesting a third party might have committed some or all of the robberies, "[t]he eyewitness evidence was problematic. Only with regard to count 5 was there evidence beyond the eyewitness testimony, but i[t] was similarly compromised." Thus, defense counsel may well have wanted the jury to know that Hannon had been sentenced to 10 years in state prison for his robberies to convey the message that a similar fate confronted this defendant if convicted. Counsel could reasonably hope that knowing the stakes, the jury might be reluctant to condemn defendant to years in state prison on close and disputed eyewitness testimony. This tactical reason applies with equal force to the alleged prosecutorial misconduct. Because there was not only a rational, but also a very good tactical reason, for choosing not to object to the admission of the evidence, the failure to object did not constitute ineffective assistance of counsel.
>
> Under the circumstances, we need not address defendant's claims of prejudice. (See People v. Rodrigues (1994) 8 Cal.4th 1060, 1126.)

(Lod. Doc. 3 at 3-5.)

Petitioner argues that this decision is not entitled to AEDPA deference because it is not based on any factual finding that attorney Griffin was employing the tactic of "jury dread"; rather, the court of appeal "simply made up a tactical reason" absent any support in the record. (Traverse at 4.) Petitioner has a point in that the Court of Appeal was engaging in gross speculation without any basis in the record for its conclusion. It might be that Mr. Griffin believed he was acting just as the appellate court surmised. Then again, Mr. Griffin might have had no strategy in place, and just missed the reference to the Hannon sentence. Possibly, Mr. Griffin's calculation of the number of years necessary for "jury dread," if indeed he believed in this phenomenon at all, might have been much more than the appellate court assumed. "Jury dread" is not the type of universal defense tool which counsel always attempt to use at trial, at

least not in a situation where a ten year sentence for numerous bank robberies is involved. In most cases, defense counsel would be prohibited from referencing potential sentencing at all during the trial on the merits of guilt. Thus, assuming the Court of Appeal's conclusion could not be confirmed, even in an AEDPA context, petitioner still cannot meet the test for an evidentiary hearing under Schriro because he has not alleged facts showing that he was prejudiced by counsel's failure to object, and thus cannot make out a colorable claim for ineffective assistance of counsel.

C. Discussion

Because the state court did not reach the issue of prejudice, the undersigned reviews this issue de novo. See Himes, supra, 336 F.3d at 853.

In Strickland v. Washington, 466 U.S. 668, 694, 104 S.Ct. 2052 (1984), the Supreme Court held that there are two components to an ineffective assistance of counsel claim: "deficient performance" and "prejudice."

"Deficient performance" in this context means unreasonable representation falling below professional norms prevailing at the time of trial. Strickland, 466 U.S. at 688-89. To show "deficient performance," petitioner must overcome a "strong presumption" that his lawyer "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 690. Further, petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." Id. The Court must then "determine whether, in light of all the circumstances, the identified acts or omissions were outside the range of professionally competent assistance." Id. The Supreme Court in Strickland recognized that "it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689. Accordingly, to overturn the strong presumption of adequate assistance, petitioner must demonstrate that "the challenged action cannot reasonably be considered sound trial strategy under the circumstances of the case." Lord v. Wood, 184 F.3d

1083, 1085 (9th Cir. 1999).

To meet his burden of showing the distinctive kind of "prejudice" required by Strickland, petitioner must affirmatively "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694; see also Lockhart v. Fretwell, 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993) (noting that the "prejudice" component "focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair").

Here, regardless of the outcome on the first prong, it is clear that petitioner has not alleged facts sufficient to show prejudice under the second prong. Seeking to link Mr. Griffin's failure to object to petitioner's subsequent conviction of two counts of bank robbery, petitioner cites the following facts: The jury deliberated for over eight hours; they had four different questions relating to two of the five counts; at one point, they asked if they had the option of a hung jury on a particular count; and, despite "problematic" and "less than overwhelming" evidence, they ultimately convicted on two counts. (Traverse at 6-7 (record citations omitted).) None of this suggests that the jury mistakenly deduced that petitioner would serve a sentence comparable to Hannon's, nor that sentencing considerations played a significant, or any, role in their decision.[1] Certainly these bare facts do not suggest that Mr. Griffin's failure to object to statements about Hannon's ten-year sentence was the decisive factor in the jury's decision to convict. See Strickland, 466 U.S. at 694 (showing of prejudice requires "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.") Petitioner simply asks the court to speculate along with him that if Mr. Griffin had

---

[1] None of the jury's questions concerned sentencing issues. Rather, three of the four questions went to evidentiary issues, and one asked whether was possible to have "a hung jury on a particular count." (Clerk's Transcript at 104-106.)

raised certain objections, petitioner would not have been convicted. This the court declines to do.

Petitioner knows that he cannot acquire, or seek to admit, the jurors' individual thought process during deliberations, i.e., whether the reference to the Hannon sentence was a significant factor in their thinking. See Estrada v. Scribner, 512 F.3d 1227, 1237-38 (9th Cir. 2008). Thus, we will never know if the Hannon sentence information actually affected a juror's verdict. While *actual discussions* of sentencing possibilities in the jury room acquired from outside experience may be admissible, id., petitioner advances no such allegations of juror discussion here in this claim or any other. Thus, petitioner would not be able to show at evidentiary hearing whether defense counsel's failure to object would have in fact made any difference at all.

Rather, petitioner would have to argue that the record facts were so egregious that prejudice sufficient to undermine the confidence in the verdict would be present as a matter of law. While reference by a prosecutor to a possible light sentence for the defendant-on-trial may be prejudicial, see United States v. Greer, 620 F.2d 1383, 1384 (10th Cir. 1980)(citing Supreme Court authority), such did not happen in this case. Obviously, Greer does not preclude all reference to another's sentence in a criminal trial as defense counsel will often introduce the "deals" a co-defendant, turned government witness, received for pleading guilty and testifying. Indeed, the hiding of such information from the defense for its use is prejudicial misconduct. Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763 (1972). Here the situation falls between the two ends of the spectrum, and much closer to the non-prejudicial side. It was not error for the prosecutor to emphasize that Hannon, during his plea process, was being as honest as possible regarding bank robberies he performed (and thereby excluding himself from petitioner's charged robberies) in exchange for a lighter sentence. The prosecutor did not need to reference Hannon's specific sentence, but the jury would have understood from the prosecutor's argument, if it considered the argument at all, that the "ten years" was a special sentence given in circumstances

to another to elicit honesty, which was a circumstance not applicable to its defendant. The jury would not have understood from the evidence and argument that its defendant was also eligible for a light sentence eliciting the inference: so we (the jury) might as well go ahead and convict petitioner – it's no big deal.[2] The prosecution's error in specificity of another's sentence to an otherwise legitimate argument cannot be considered sufficiently prejudicial to warrant an overturning of the verdict.

Because petitioner has not shown prejudice as required by Strickland, he fails to state a claim for ineffective assistance of counsel. 466 U.S. at 694. Accordingly, he is not entitled to an evidentiary hearing on that claim." Correll, supra, 137 F.3d at 1413. Nor would there be any point in deposing Mr. Griffin as to his tactical reasons for failing to object, as any such evidence would go to the first prong of the Strickland test ("deficient performance") but could not improve petitioner's showing on the second prong.

V. Conclusion

For the reasons set forth above, the undersigned finds that petitioner is not entitled to an evidentiary hearing or deposition on his ineffective assistance claim.

Accordingly, IT IS ORDERED that petitioner's motion for evidentiary hearing (Docket #60 ), is denied.

As petitioner is not entitled to an evidentiary hearing because of failed Strickland prejudice, there remains nothing to adjudicate of Claim 1. It should be denied on its merits. As all previous claims have been dismissed, see Order of March 17, 2010, all claims in the amended petition have now been adjudicated. Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District

---

[2] And, the cases like Greer which find prejudice involve jurors who are told of a *very light* sentence the defendant might receive, i.e. only months of incarceration or probation, as opposed to a ten year sentence which is certainly out of the "light" category just viewing the sentence on its face.

Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: 11/01/2010

/s/ Gregory G. Hollows

_____
UNITED STATES MAGISTRATE JUDGE

GGH:0014
ford0944.evid